**IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Complainant,**

v.

**Donald C. HOHNBAUM, Respondent.**

No. 96–851.

Supreme Court of Iowa.

Oct. 23, 1996.

Norman G. Bastemeyer and Charles L. Harrington, Des Moines, for complainant.

Lee H. Gaudineer, Jr. of Austin, Gaudineer, Austin, Salmons & Swanson, Des Moines, for respondent.

Considered by McGIVERIN, C.J., and LARSON, NEUMAN, SNELL, and ANDREASEN, JJ.

LARSON, Justice.

This disciplinary case involves attorney Donald C. Hohnbaum who was charged with misleading the district court and opposing counsel as to the facts of an automobile accident case. Our grievance commission recommended that the respondent's license be suspended for a minimum of six months. On our review, we agree that he has violated several provisions of our code of professional ethics, and we impose a minimum suspension of three months.

We summarized the standard of review and the general law regarding attorney disciplinary cases in Iowa Supreme Court Board of Professional Ethics & Conduct v. Evans, 537 N.W.2d 783, 784 (Iowa 1995):

> The scope of review in lawyer disciplinary proceedings is de novo. While we give respectful consideration to the findings and recommendations of our commission, we are not bound by them. The burden of proof is on the board to prove the violations by a convincing preponderance of the evidence. This burden is greater than that required in civil cases, but less than that required in criminal cases.

(Citations omitted.)

The following facts we find to be established by a convincing preponderance of the evidence. In October 1990 a car operated by Audrey Biere struck the back of a car oper-

ated by Betty Schumann on Interstate 235 in Des Moines. Audrey Biere was insured by State Farm Insurance Company, which retained the respondent to represent Mrs. Biere and her husband, as owner of the car, in a lawsuit brought by Schumann.

The plaintiff's petition alleged, in part, that the Biere vehicle had struck the rear of the Schumann vehicle. Mrs. Biere had admitted this in her accident report to the department of transportation and in her conversations with the respondent. Because it appeared to be clear that Mrs. Biere's was the striking vehicle, the respondent initially admitted that allegation in his answer.

Subsequent to the filing of his answer, he realized that one of the officers had mistakenly stated in a report that the Schumann vehicle struck Mrs. Biere's. Obviously seeking to capitalize on this mistake, the respondent moved to amend his answer to deny that his client had struck the Schumann vehicle. This application to amend, filed shortly before trial, was heard by the court. In arguing for his right to amend his answer, the respondent stated to the court that

> our rules ... now require an answer within twenty days, and I think while law is more exact science than medicine, it's not exact science. *We all make mistakes, and we have to file an answer sometimes without receiving a file.*

(Emphasis added.) The court denied the motion to amend.

Although the respondent suggested to the court that the amendment to his answer was necessary because he did not have the insurance company file at the time of his original answer, this was not true. Evidence later showed that he had the insurance company's file in his possession at the time. Furthermore, he knew from his own conversations with his client that his client's was the striking car.

At the trial, Mrs. Schumann testified that Biere's vehicle struck hers. However, Mrs. Biere, the only other known eyewitness to the collision, did not testify or even appear at the trial. When the plaintiff's attorney realized, at the end of the first day of trial, that Mrs. Biere was not going to be available to testify, he hired a private detective to find her and serve a subpoena on her. The detective was not successful. Mrs. Biere and her daughter, it developed later, had stayed in a local hotel during the trial. The respondent and Mrs. Biere attributed her absence from the trial to the mental condition and suicidal tendency of Mrs. Biere's daughter. However, the critical events involving a possible suicide had occurred some months before.

Of course, Mrs. Biere was not required to be present for the civil trial—at least in the absence of a subpoena served upon her. Nevertheless, the evidence was quite clear that the respondent encouraged her to stay away for the purpose of frustrating the jury's search for the truth. This was virtually confirmed in the respondent's posttrial letter to State Farm in which he suggested an appeal. He said:

> You will recall that we elected not to have Mrs. Biere testify in view of the fact that the police officer would not change his version of the accident; namely, that the plaintiff struck our vehicle in the rear, pushing it into the third unknown vehicle that left the scene of the accident.

The letter further complained that:

> The thing that really set the Court, and ultimately the jury, against our insured was that the Court read and illegally obtained the accident report, contrary to the provisions of [Iowa Code] Section 321.271, which had been filed by Audrey Biere with the Iowa Department of Transportation. That report, of course, indicated according to her memory after the accident, that she had been the one that rear ended the Plaintiff.

Further, he complained about the insurance company's report that had been placed in evidence, stating:

> Those items admitted into evidence [were] the computerized report of the agent showing the insured's version of the accident, together with the estimates of damage to the claimant's vehicle. All of this, of course, contradicted the police officer and our theory of the case.

Essentially, the respondent's complaint is that, because the court allowed the jury to

**552**

see the contents of the accident report and the insurance company's file, the jury obtained the true facts. His trial strategy aimed at confusing the issue of who struck whom was, therefore, ineffective.

This respondent, as a lawyer engaged to defend the case, was justified in making the plaintiff prove her case. He was not justified, however, in making misleading statements to the court or in persisting in a position that was patently frivolous. We agree with the commission that the respondent's misleading statement to the court and his tenacious pursuit of a frivolous defense violated our code of professional responsibility. Specifically, he violated DR 1–102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), DR 1–102(A)(5) (engaging in conduct that is prejudicial to the administration of justice), and DR 1–102(A)(6) (engaging in any other conduct that adversely reflects on the lawyer's fitness to practice law). We further agree that this conduct violated DR 7–102(A)(1) (asserting a position or defense when it is obvious that such action would serve merely to harass or maliciously injure another).

We conclude that the respondent's license should be suspended indefinitely with no possibility of reinstatement for three months. This suspension shall apply to all facets of the practice of law. *See* Ct. R. 118.12. Upon any application for reinstatement, the respondent shall have the burden to prove that he has not practiced law during the period of suspension and that he has met the requirements for client notification and disengagement from the practice of law as set forth in court rules 118.13 and 118.18. The costs of this proceeding are assessed to the respondent.

**LICENSE SUSPENDED.**