# IN THE SUPREME COURT OF IOWA

No. 18–0352

Filed September 14, 2018

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**ROYCE D. TURNER,**

Respondent.

---

On review of the report of the Iowa Supreme Court Grievance Commission.

The grievance commission found violations of numerous rules and recommended respondent's license be suspended for three months. **LICENSE SUSPENDED.**

Tara van Brederode and Wendell J. Harms, Des Moines, for complainant.

Alfredo Parrish of Parrish, Kruidenier, Dunn, Boles, Gribble, Gentry, Brown & Bergmann LLP, Des Moines (until withdrawal), and then Royce D. Turner, West Des Moines, pro se, for respondent.

**WATERMAN, Justice.**

Royce D. Turner, over a span of twenty months, was repeatedly rebuked by state and federal judges for missing hearings and violating court rules. He was found in contempt several times. Three of his clients were arrested and two were jailed for missing hearings he overlooked. Despite an ongoing audit, Turner continued to flout basic requirements for client trust accounts.

The Iowa Supreme Court Attorney Disciplinary Board brought a complaint against Turner alleging multiple violations of the Iowa Rules of Professional Conduct. He delayed responding to the Board's inquiries and complaints. Our court imposed a five-month interim suspension to protect the public. We permitted Turner's return to practice with the help of an experienced attorney under stipulated limitations pending resolution of the disciplinary charges.

The parties submitted a stipulation of facts. A division of the Iowa Supreme Court Grievance Commission found violations of numerous rules. Noting Turner's inexperience and attention deficit hyperactivity disorder (ADHD), the commission recommended a three-month suspension of his license to practice law with conditions on his reinstatement. The Board recommends a suspension of twelve to eighteen months. Based on our de novo review, we now suspend Turner's license to practice law for one year from the date of this opinion with conditions on his reinstatement.

Inexperienced sole practitioners who lack mentors and take on cases without the requisite experience are at greater risk of making mistakes. Any Iowa lawyer should be concerned about receiving one rebuke from a judge. Attorneys should view a single mistake as a wake-up call to reexamine practices or get help to avoid further missteps.

Continuing to make the same mistakes without correcting behavior invariably leads to more trouble, as shown here. According to the adage commonly attributed to Will Rogers, "good judgment comes from experience, and a lot of that comes from bad judgment."[1] We hope Turner gains better judgment from his bad experiences.

## I. Background Facts and Proceedings.

Turner obtained his Iowa law license in 2013 and began a solo practice in Polk County. He suffers from ADHD and depression. Turner receives treatment and takes medication for those conditions. This case arises from Turner's representation of many clients. We find the following facts as stipulated or otherwise established in the record and review them in the sequence alleged in the Board's second amended complaint.

**A. Untimely Response to Complaint (Count I).** On January 26, 2015, Turner received from the Board a complete copy of an ethics complaint filed by K.D. regarding Turner's relationship with W.B. After Turner failed to respond, the Board mailed him a second copy by certified mail that the postal service returned after Turner declined to retrieve it. On May 7, at Turner's request, the Board mailed Turner a third copy and extended his deadline to respond to May 29. Turner still did not respond by this extended deadline.

On July 23, the Board informed Turner by email that it would seek a suspension of his law license due to his failure to respond. The next day, the Board filed a certificate of noncompliance with this court stating that Turner failed to respond and asking the court to issue a notice of possible temporary suspension of Turner's license. Turner replied to the

---

[1]The Official Website of Will Rogers, http://www.cmgww.com/ historic/rogers/about/miscellaneous.html (Oct. 5, 2016, 10:23 AM) [https://perma.cc/CR3Y-LAQB.

Board's email, stating he had not yet received a complete copy of the complaint. The Board sent Turner a fourth copy. Turner substantively responded to the complaint on July 28—six months after he first received it. Turner admits he knowingly failed to respond to the Board's lawful demand for information. He attributed his lack of responsiveness during this period to his ADHD and depression.

**B. The Philip and Jackson Representations (Count II).** In September 2014, Agok Philip retained Turner to represent him in four criminal cases in Polk County. Philip made seven payments to Turner totaling $1075, but Turner failed to deposit any of these sums in his client trust account. Turner stipulated that he was "not completely familiar with the trust account process" at that time. Turner initially filed appearances in only two of Philip's four cases, prompting judicial inquiries into his role in the other two. He belatedly filed one appearance only after repeated reminders by the court and even then without the requisite certificate of service.

Russell Jackson retained Turner to represent him in two criminal cases in Polk County scheduled for a plea hearing on December 10. Jackson made fourteen payments to Turner totaling $1880, but none were deposited into Turner's client trust account. On December 9, Turner filed motions to continue but did not bring these motions to the assigned judge's attention. Neither Jackson nor Turner appeared at the scheduled plea hearing the next day. The judge denied the motions to continue and issued warrants for Jackson's arrest. The Polk County Sheriff arrested Jackson for failure to appear.

On March 9, 2015, Turner received the Board's complaint regarding his representations of Philip and Jackson. Turner failed to respond. On April 7, the Board sent Turner a second notice of the

complaint by restricted certified mail. Turner failed to claim this letter. On June 2, the Board again served the complaint by certified mail, and Turner again failed to claim the letter. The Polk County Sheriff personally served Turner with the complaint on July 9. Turner claimed he had already responded to this complaint, and the Board replied that it had not received his response. The Board extended Turner's response deadline to July 21 at his request, but Turner missed the extended deadline. He substantively responded to this complaint only after the Board filed its certificate of noncompliance with this court on July 24, more than four months after first receiving it. Turner concedes he knowingly failed to respond to the Board's lawful demand for information.

**C. Bankruptcy Cases (Count III).** Turner admits he "was not as familiar as he should have been with bankruptcy cases." On May 5, 2014, he presented paper bankruptcy petitions for seven individuals, even though electronic filing in that forum has been mandatory since 2000. His subsequent rule violations and failure to attend hearings led to a number of rebukes, dismissals, and other sanctions, as follows.

Turner filed a Chapter 7 bankruptcy case for Steve Cummings. Turner reported that his fee was $875. The U.S. Trustee moved to dismiss the bankruptcy action and to order Turner to refund the fees. The court scheduled a hearing on these motions. Turner failed to attend the hearing, and the court granted both motions. A week later, Turner filed a second bankruptcy petition for Cummings that omitted the required listing of creditors, schedules, and statement of financial affairs. The U.S. Trustee moved for an order to show cause for Turner to "explain his failure to comply with the Order of this Court, the continued deficiencies with his filing[s] . . . , his failure to appear at hearings and his

overall practice before the Court." Following a hearing, the court ordered Turner to "supply the bankruptcy schedules bearing his clients' signatures" and to deliver "the original power of attorney documents that were executed involving any" of the clients identified in the order by the next day. The court extended by six days the deadline for Turner to refund the $875 fee to Cummings. Two days after the deadline for refunding Cummings's fee, Turner moved to vacate the refund order. The U.S. Trustee then filed a status report noting Turner's noncompliance.

Turner filed a separate Chapter 7 bankruptcy case for Laura Cummings without her required signatures, and the court scheduled a hearing after Turner failed to correct these omissions. Neither Turner nor Cummings attended the hearing, and the court dismissed the case. The court ordered Turner to attend training on the court's electronic filing system. Turner moved for relief from the order dismissing the case, stating he missed the hearing due to illness. The U.S. Trustee objected due to other problems in documents submitted by Turner. The court scheduled a hearing on the motion. Turner also filed a motion to reinstate the case. Neither Turner nor Cummings attended the hearing, and the court denied Turner's motions. Turner then filed a second bankruptcy case but omitted the filing fee or application to pay the fee in installments and omitted the requisite schedules, statement of financial affairs, credit counseling certificate, and listing of creditors. The bankruptcy trustee responded with a motion for order to show cause. The court scheduled a hearing, which Turner failed to attend. The court dismissed the second petition. A new lawyer took over Cummings's case.

Turner filed a Chapter 7 petition for Kelly Willard. The U.S. Trustee moved to compel the filing of additional and corrected documents

and then moved to dismiss because Willard had not obtained the requisite credit counseling. Turner objected to the motion to dismiss, and the court scheduled a hearing. A day before the hearing, Turner filed a motion to withdraw Willard's petition. The court granted the motion to dismiss.

After filing Chapter 7 bankruptcy cases for Walter Anhorn and Lasandra Kearney, Turner filed reaffirmation agreements between his clients and several creditors. The U.S. Trustee objected to the reaffirmation agreements. Turner then moved to withdraw the agreements. The U.S. Trustee moved to dismiss Anhorn's case because Anhorn had not obtained credit counseling as required. Turner objected to the motion to dismiss and moved to withdraw Anhorn's petition one day before the hearing, which Turner failed to attend. The court dismissed the case. A new lawyer took over Anhorn's matter.

In Kearney's case, Turner filed a motion to dismiss, stating that Kearney did not qualify under Chapter 7 and planned to file under Chapter 11. After a hearing that Turner failed to attend, Kearney appeared and stated she had not authorized Turner to file the motion to dismiss. The court ordered the motion to dismiss withdrawn and ordered Turner to refund $800 to Kearney that month. The court dismissed Kearney's case after she failed to meet its deadline to obtain new counsel.

Turner filed Chapter 7 bankruptcy cases for Fred Leaming and Rick Andreas. The U.S. Trustee moved to dismiss both cases and sought refunds of fees paid to Turner and an order directing Turner to pay the fees associated with refiling each case. The court dismissed both cases. Turner then moved to reinstate the cases. He also filed a second bankruptcy petition in each case. Following a hearing, the court ordered

Turner to refund $497.50 to Leaming. Turner did not comply, so the U.S. Trustee moved for an order to show cause and to dismiss Leaming's second case. The bankruptcy trustee also moved for order to show cause, in part because Turner failed to appear for the meeting of creditors and provided no verified, justifiable excuse for his absence. After a hearing, which Turner failed to attend, the court dismissed Leaming's second case. The court entered judgment in favor of Leaming and against Turner for $497.50. In Andreas's second case, the court ordered Turner to "address the deficiencies discussed on the record and [to] take all steps necessary to ensure that he is able to represent clients in bankruptcy cases in this forum in a competent fashion." Andreas received his discharge in bankruptcy a few months later.

On December 5, 2014, the bankruptcy court judge filed an order for Turner to show cause regarding cases he filed for Cummings, Willard, Anhorn, and Kearney. The court identified multiple problems, including that Turner filed documents that violated electronic filing rules, lacked required information and signatures, contained inaccurate information, or lacked his client's authorization. The court also noted Turner failed to appear at four court hearings, failed to abide by court orders to produce records and refund fees, and may have made misrepresentations to the court. The judge determined that Turner's conduct violated Bankruptcy Rule 9011(b), which states,

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,
>
> > **(1)** it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

> **(2)** the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> **(3)** the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Bankr. P. 9011(b). The judge concluded that sanctions were warranted and ordered Turner to complete four hours of legal ethics education and four hours of legal education on the "operation and management of a law office." The court entered judgments against Turner in favor of these clients. At the time of the commission's hearing, Turner had not satisfied the judgments.

**D. The Lindemann Representation (Count IV).** Lowell Lindemann retained Turner to represent him in a criminal case in Polk County. Lindemann made nine payments to Turner totaling $2190. Turner failed to deposit any of those payments into his client trust account. Turner admits he "was unaware of the rule that unearned fees had to be deposited into his trust account." Turner failed to appear for the pretrial conference and status hearing. Three days before the next pretrial conference, Turner filed a motion to continue. The court denied the motion. Turner and Lindemann failed to appear at the pretrial conference, and the judge issued a warrant for Lindemann's arrest. Lindemann was arrested and had to post a $5000 cash-only bond to be released from jail. Turner filed a motion to suppress but did not attend the hearing on the motion, so the court deemed the motion withdrawn. The court accepted Lindemann's guilty plea two days later and scheduled his sentencing hearing. Turner failed to attend Lindemann's sentencing

hearing. Lindemann waived representation by counsel and proceeded with the sentencing pro se.

**E. The Guisinger Representation (Count V).** In May 2015, Todd Guisinger retained Turner to represent him in a Polk County criminal case (third offense operating while intoxicated (OWI)). Turner's fee agreement with Guisinger stated, "Attorney Appearance fee shall be $600. Payments of $130 shall be paid on 5/30/15, after the receipt of attorney appearance fee, every Friday . . . for the duration of the proceedings." This fee agreement did not set a cap on the fees or establish a flat fee. Guisinger made thirteen payments to Turner totaling $2190, but Turner deposited none of the payments into his client trust account because "he was fully unaware of the rule that unearned fees had to be deposited into his trust account."

The court rescheduled the pretrial conference three times at Turner's request due to his "scheduling conflicts." The court then appointed a public defender to represent Guisinger, who had terminated Turner as his lawyer. When asked to provide an accounting of the services provided to Guisinger, Turner responded that he "would not be able to provide invoices because [he] rendered services to [Guisinger] on a flat fee as opposed to rendering services on an hourly basis."

**F. The Kemp Representation (Count VI).** Mark Kemp retained Turner in March 2015 to represent him in a Polk County criminal case. Kemp made twenty-six payments by October totaling $3505. Turner did not deposit any payments from Kemp into his client trust account because he was "unaware of the rules." Turner filed a motion to suppress fifteen days late and a motion for depositions at state expense thirty-eight days late. The state resisted both motions as untimely. The court denied the motion to suppress as untimely, noting Turner "made

no argument to justify the late filing." After Turner failed to appear for a change of plea hearing, the court appointed a public defender to represent Kemp.

**G. Contempt in Mahaska County (Count VII).** Turner tried a case in Mahaska County, which the judge submitted to the jury late afternoon. The next day, the jury reported it was deadlocked. Because the judge was unable to contact Turner, she declared a mistrial and rescheduled the jury trial for a few months later. The judge conducted a hearing in which Turner participated by phone. The judge found Turner in contempt of court and ordered him to complete forty hours of community service in Mahaska County and to pay the costs. At the compliance hearing ten days later, the judge found Turner in contempt of court for not complying with the previous order. The court ordered Turner to serve thirty days in jail with the opportunity to purge this contempt by completing the previously ordered community service within two months. Turner complied by completing the community service, and the judge dismissed the contempt action at his cost. At the time of the commission's hearing, Turner had not paid the costs.

**H. The Robinson and Dean Representations (Count VIII).** Jordan Robinson retained Turner to represent him in a criminal case in Story County. They failed to attend a pretrial conference, and the court issued a bench warrant for Robinson's arrest. The next day, Turner filed a motion to recall the warrant. The sole reason he gave for filing the motion was "[t]hat the Court submitted a bench warrant." The court found no good cause existed to recall the warrant and denied the motion. The sheriff arrested Robinson, who was then released without bond. Turner failed to appear for the second day of Robinson's jury trial. The court declared a mistrial and rescheduled the trial.

Jordan Dean retained Turner to represent him in a criminal case in Story County. Turner and Dean failed to attend the arraignment, and Turner neglected to file a written arraignment. The court issued a bench warrant for Dean's arrest. Turner then filed a motion to recall the bench warrant and later filed a written arraignment and plea of not guilty. The court canceled the arrest warrant.

**I. Contempt in Story County (Count IX).** The district court entered an order, requiring Turner to "show cause, if any, why he should not be found in contempt for having failed to appear" for the second day of Robinson's jury trial in March 2016. Turner moved to continue the hearing, which the court denied. Turner failed to appear, and the court ordered a warrant for Turner's arrest. Turner was arrested and released on bond. Another judge found Turner in contempt. The court ordered Turner to pay the jury costs of $1920.75 and a $500 fine. The order provided that the payments were due immediately and would be considered delinquent if not paid within thirty days. At the time of the commission's hearing, Turner had not yet made these payments.

**J. The Ramsey Representation (Count X).** In January 2016, Brian Ramsey retained Turner to represent him in a Polk County criminal case. The fee agreement between Turner and Ramsey stated,

> Attorney's retainer shall be $1000 and will vest with Turner Law Office immediately upon receipt. The rate for representation shall be $1000. Client shall pay $2,000 total. $500 of the rate for representation shall vest 2/5/1[6]. The remaining $500 shall vest 2/12/16.

Ramsey pled guilty to second offense OWI. His plea agreement stated that Ramsey would serve his sentence at the Fort Des Moines Correctional Facility, but noted the court was not bound by the agreement and could impose the maximum sentence. The court

sentenced Ramsey to prison for up to two years and set the appeal bond at $2000, cash only. On April 29, 2016, Turner moved for an order "Pro Nunc Tunc," asking the court to strike the sentencing order "due to all parties involved misunderstanding [Ramsey's] eligibility for the Fort[] Des Moines Program." The motion asked that Ramsey be released and "that a new pretrial conference be set to determine the direction of [Ramsey's] proceedings accordingly." The court scheduled a hearing on this motion for May 13. On May 2, Turner filed a notice of appeal.

On May 13, the district court denied Turner's motion, stating, "After discussing this matter, in the absence of [Turner], the record establishes that the case has been appealed to the Iowa Supreme Court. Since the case is . . . pending appeal, this Court no longer has jurisdiction of this matter." The order noted that Turner arrived at the hearing forty-five minutes late.

On May 18, Turner and Ramsey entered into a second fee agreement. Turner agreed to "represent [Ramsey's] interests . . . whereby the following will be filed[:] withdraw of appeal, motion to vacate judgment, and motion to suppress." The agreement provided that a flat fee of $500 would "vest with [Turner] immediately upon receipt."

Because Turner failed to file the combined certificate and to pay the filing fee, the appellate clerk sent Turner a "Notice of Default and Assessment of Penalty" on June 1. Turner did not cure the default, so we dismissed Ramsey's appeal. Turner then filed a motion to reconsider the district court's judgment, and the district court scheduled a hearing for July 18. On that date, the appellate clerk issued procedendo. The district court established a briefing schedule and scheduled a hearing for August 8. Ramsey and Turner then entered into a third fee agreement

providing that Turner would represent Ramsey for the sentencing hearing for a flat fee of $750.

After the hearing on August 8, the district court denied Ramsey's motion to reconsider the sentence, noting "the court is not bound by any determination of counsel by any plea negotiations." The court stated, "I know that I did not promise you that you would be going to the Fort Des Moines facility." The court explained, "I just don't believe that that was an understanding at the time, that you would not be going to prison if you couldn't get into the Fort Des Moines."

**K. The Dondo Representation (Count XI).** Comfort Dondo retained Turner to represent her in a Polk County criminal case in January 2016. Turner filed three consecutive motions to continue the pretrial conference. The court granted the first two but denied the third. The court ordered Dondo and Turner to personally appear on March 21. Turner failed to appear. After waiting an hour and twenty-five minutes, the court made a record with Dondo and the prosecutor. The court set a hearing on the state's oral motion for sanctions against Turner based on his failure to appear. Turner requested a continuance to retain counsel. The court continued the sanctions hearing. At the rescheduled hearing on sanctions, the court found Turner in contempt, noting,

> Turner violated his obligation to appear or to inform the court he would not be appearing. To date, he has not presented any adequate excuse for failing to do so. This dereliction of duty constitutes a willful neglect or violation of duty and a violation of the process of the court. It was a volitional act done by one who should reasonably be aware that his conduct is wrongful. [Turner's] nonappearance resulted in obstruction of the administration of justice. Further, it is obvious similar conduct has occurred in several cases and jurisdictions in the past.

The court ordered Turner "to implement a docket-control system to track key deadlines and obligations" and fined him $250. Turner had not paid this fine at the time of the commission's hearing.

**L. Client Trust Account Audit (Count XII).** In his 2014 Client Security Commission Combined Statement and Questionnaire, Turner falsely answered "yes" to these questions, "Do you keep all funds of clients for matters involving the practice of law in Iowa in separate interest-bearing trust accounts located in Iowa?" and "Are all retainers . . . deposited in your trust account?" Turner asserts he misread the questions without deliberately intending to mislead the Client Security Commission.

In his 2015 questionnaire, Turner answered "NA" ("Not applicable") to those questions, as well as questions such as, "Are reconciliations of your trust account balances with bank statement balances and individual client ledger balances performed monthly?" While Turner had opened a client trust account at U.S. Bank in September 2014, Turner's questionnaire failed to identify any financial institution in which he maintained such an account.

In August 2015, Charles Brinkmeyer began an audit of Turner's client trust account. Brinkmeyer introduced himself as a Client Security Commission auditor and requested a meeting. Because Turner asked for a list of topics to be discussed at the meeting, Brinkmeyer sent a more detailed message about the audit process. They agreed on a time to meet, yet at their initial meeting, Turner provided minimal responses to Brinkmeyer and argued he had received inadequate notice. Turner identified his client trust account at U.S. Bank, but the Office of Professional Regulation had no records that this account was an Interest on Lawyers Trust Account (IOLTA).

Turner told Brinkmeyer that he issued notices and accountings to clients when he withdrew funds from the client trust account and that he maintained a client ledger. He produced a spreadsheet as his client ledger. This was his only record of client payments and expenses.

Turner and Brinkmeyer agreed to meet again in September. Brinkmeyer agreed to send Turner a written request for records he wanted to review and sent this request on August 18. The same email also reminded Turner of their next meeting.

On August 27, the Client Security Commission issued a Notice of Delinquency to Turner. The notice alleged that Turner failed to cooperate with the audit and that he failed to comply with requests for information needed to complete the audit.

Turner and Brinkmeyer met again on September 14 at Turner's office. Turner stated that he had to leave soon to attend a court hearing in Carroll County that started in an hour and a half. Turner explained that he had not put the meeting on his calendar and had been unable to reschedule the hearing. Turner printed a spreadsheet for Brinkmeyer to review that began on January 1, 2015, even though Brinkmeyer requested records beginning in September 2013.

The following day, Turner wrote to the assistant director for the Supreme Court Boards and Commissions. He stated, "Provided the type of work I do for clients the money I receive vests immediately where I have no reason to place money in a trust account." Turner later wrote to Brinkmeyer, noting,

> The vast majority of cases I've taken since the beginning of my practice involved an agreement that provided the money I received from payments vested with me immediately thus making the need for me to hold money in my attorney trust account not required. However, from this experience I have

learned the proper way to account for my funds in an instance where such an agreement is not in place.

The Client Security Commission issued another Notice of Delinquency to Turner alleging that he failed to comply with requests for information.

Turner filed an affidavit on December 17, in which he stated that when he began his law practice, he opened a client trust account at Wells Fargo Bank but no longer had access to those account records. He also stated that he opened his current client trust account at U.S. Bank in September 2014. He acknowledged that he did not create or maintain any three-way reconciliations from September 2013 to September 2015 because he believed that under his fee agreements, he did not need to deposit client funds in a client trust account. For the same reason, he did not create or maintain client subaccount ledgers from March through September 2015. Turner's affidavit also stated that he did not create or maintain retainer agreements, invoices, accountings, or notices for several of his clients, nor did he create or maintain a receipt book.

On May 13, 2016, Turner responded to Brinkmeyer's document request regarding eight clients by stating, in part,

> I collect an appearance fee to begin working on someone's case then begin collecting weekly installments for the flat rate I'm charging in a given case. I don't charge by the hour. I don't accept money that I haven't earned.

The Client Security Commission issued Turner another Notice of Delinquency on July 15. The same month, the Board opened its investigation into Turner's compliance with the client trust account rules. Turner responded to the Board's notice of investigation on August 31. He reported that some of the documents requested by the Client Security Commission did not exist and acknowledged that his recordkeeping practices could have been "better." He asserted that he

had not intentionally destroyed any records. Turner also reported that he used flat fee agreements. He stated that he "perform[ed] work on [the clients'] respective cases each week, and at the end of each week, payment for [his] services would be due." He denied commingling client funds with his funds, relying on court rule 45.10 (flat fee) for the proposition that he only had to deposit advance payments into the client trust account. He then explained that his clients never made advance payments:

> [W]hen my clients pay me, it is for work that I have already provided. Therefore, the funds are placed into my own account because those funds have been earned. My only qualm, however, concerns my failure to maintain a complete accounting of records.

Turner further explained that he

> did not provide the Commission with copies of the monthly three-way trust account reconciliations or client sub-account ledgers because [he] did not create or maintain such records. [He] did not believe it was necessary to create the reconciliations because [he] never received advance fees and expense payment that would require [him] to deposit certain funds into the client trust account. . . . Because [he] earned the weekly payments from [his] clients, those payments did not need to be deposited in the trust account. . . . Per [his] agreements with each client, all funds received in those weekly payments served as compensation for the services [he] rendered in the previous week, and [he] would deduct each payment from the total quoted price for [his] legal services.

In his 2016 Combined Statement and Questionnaire, Turner answered "NA" to several questions, including "Do you keep all funds of clients for matters involving the practice of law in Iowa in separate interest-bearing trust accounts located in Iowa?" and "Are all retainers . . . deposited in your trust account?" On December 6, 2016, the Client Security Commission issued a Notice of Delinquency alleging that Turner failed to comply with requests for information.

During the audit, Turner provided documentation to Brinkmeyer about some of Turner's clients. This documentation showed that Turner's fee agreements did not establish a flat fee or set a cap on what the client's fees would be. For example, the fee agreement for Travon Lackland stated, "Attorney's retainer fee is $400. Remaining fee shall be $150 a week for the duration of the proceedings."

Turner's fee agreement for Billy McKinney provided for an "appearance fee":

> Attorney appearance fee of $750 shall be paid to Turner Law Office PLLC US Bank Account. $175 will be paid each Friday to Turner Law Office PLLC US Bank Account following the receipt of appearance fee starting 5/1/15 until the completion of the case.

This fee agreement provided for payment to Turner's operating account, not a client trust account.

Turner's fee agreements with Nakeisha Brown and Calvin Lacey similarly failed to establish a flat fee or set a cap on fees. Turner did not deposit any payments from Lackland, McKinney, Brown, or Lacey into his client trust account. His fee agreement with Tabatha Carlson stated, "Appearance (start) fee shall be $650. Attorney fee shall be $1900. Payments of $300 shall be paid bi-weekly beginning 10/18/2016 until outstanding balance is paid. All payments vest upon receipt. . . ."

Brinkmeyer's April 24, 2017 report noted that while Turner's records for 2015 disclosed that he received over $92,000 in client fees, he deposited only $1376 into his client trust account. Based on the records Turner provided, the auditor concluded Turner had not prepared or retained any form of check register, client ledgers, client invoices, notices and accountings prepared contemporaneously with withdrawal of funds from the client trust account, or other records required under court

rules. With regard to his client trust account, Turner had not prepared monthly triple reconciliations, maintained records to show the source of deposits, retained records for electronic transfers, or retained bank statements. Turner also had withdrawn cash from the client trust account on at least two occasions. Some of Turner's fee agreements required weekly payments to Turner regardless of what services he provided or directed payments to Turner's operating account, rather than his client trust account.

Turner responded to the audit report on May 19. He reported that he failed to maintain complete records as required by the court rules. He stated, "While imperfect, [his] system of accounting was not careless with client funds." He acknowledged he provided "factually incorrect information" on his yearly questionnaires. He stated he did not intend to "stymie" the auditor but was operating with only one laptop and therefore had difficulty getting information to the auditor in a timely fashion.

**M. Disciplinary Proceedings.** We suspended Turner's law license on the Board's motion on December 28, 2016, pursuant to Iowa Court Rule 34.14 (interim suspension for threat of harm). On March 6, 2017, the Board filed its complaint against Turner with the commission, alleging numerous violations of the Iowa Rules of Professional Conduct. Turner and the Board entered into a joint stipulation to allow Turner to have his license conditionally reinstated. After a hearing, we reinstated his license on May 17 and ordered Turner to "comply with all conditions imposed by the joint stipulation," including that Turner limit his practice to criminal law and family law with no more than eight clients at a time and further restricting his criminal representation to defendants charged with Class D felonies or misdemeanors. These limitations have remained in place.

On November 8, 2017, the Board filed a second amended complaint. The parties submitted a joint stipulation, which the commission accepted on November 13. The commission held a hearing on the issue of sanctions the same day, and the parties submitted posthearing briefs. The commission issued its Findings of Fact, Conclusions of Law, and Recommendations on February 26, 2018. The commission found Turner violated the rules as charged in the Board's second amended complaint and recommended we impose an additional three-month suspension with several conditions for reinstatement. While acknowledging the "seriousness of the offenses," the commission relied in mitigation on Turner's "relative lack of experience in the practice of law" and his "medical conditions and mental health issues."

## II. Scope of Review.

"We review attorney disciplinary proceedings de novo." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Silich*, 872 N.W.2d 181, 188 (Iowa 2015). "The Board must prove attorney misconduct by a convincing preponderance of the evidence, a burden greater than a preponderance of the evidence but less than proof beyond a reasonable doubt." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Morse*, 887 N.W.2d 131, 138 (Iowa 2016) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Weiland*, 862 N.W.2d 627, 634–35 (Iowa 2015)). While we give the commission's findings and recommendations respectful consideration, we are not bound by them. *Id.*

Stipulations of fact are binding on the parties, but we are not bound by stipulations of violations or sanctions. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Clarity*, 838 N.W.2d 648, 651 (Iowa 2013). Instead, we review the stipulation and record to determine whether a violation occurred and what sanction is appropriate. *Id.*

### III. Ethical Violations.

The parties stipulated to the foregoing facts and to Turner's violation of several rules. Upon our de novo review, we conclude Turner violated multiple disciplinary rules.

**A. Neglect.** While "[o]ur rules of professional responsibility no longer expressly refer[ence] . . . neglect, . . . we continue to sanction neglect through several rules. *Silich*, 872 N.W.2d at 188. "We have recognized that rules 32:1.3 (diligence), 32:1.4 (client communication), and 32:3.2 (expediting litigation) all sanction neglect." *Id.* at 188–89. We address each rule separately.

1. *Due diligence.* Rule 32:1.3 states, "A lawyer shall act with reasonable diligence and promptness in representing a client." Iowa R. Prof'l Conduct 32:1.3. The commission found Turner violated this rule. "When an attorney 'fails to appear at scheduled court proceedings, does not make the proper filings, or is slow to act on matters,' he or she violates rule 32:1.3." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Weiland*, 885 N.W.2d 198, 208 (Iowa 2016) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kingery*, 871 N.W.2d 109, 117 (Iowa 2015)). Turner repeatedly failed to attend hearings. Three of his clients were arrested for failing to appear. Turner missed deadlines for filing a motion to suppress and a motion for depositions at state expense. Rule 32:1.3 is also violated when an attorney's neglect results in the client's loss of a right to appeal. *Clarity*, 838 N.W.2d at 658. Turner failed to cure his defaults in the Ramsey appeal, resulting in its dismissal. We conclude Turner violated rule 32:1.3.

2. *Client communication.* Rule 32:1.4(a)(1) requires attorneys to "promptly inform the client of any decision or circumstance with respect

to which the client's informed consent ... is required." Iowa R. Prof'l Conduct 32:1.4(a)(1). Comment 2 states,

> If these rules require that a particular decision about the representation be made by the client, paragraph (a)(1) requires that the lawyer promptly consult with and secure the client's consent prior to taking action unless prior discussions with the client have resolved what action the client wants the lawyer to take.

*Id.* r. 32:1.4 cmt. 2. Turner without his client's authorization moved to dismiss her Chapter 7 bankruptcy case. We agree with the commission's determination that Turner violated rule 32:1.4(a)(1).

Rule 32:1.4 also requires an attorney to "reasonably consult with the client about the means by which the client's objectives are to be accomplished." *Id.* r. 32:1.4(a)(2). The commission found Turner violated this rule with his bankruptcy clients. In several cases, Turner had to file a second bankruptcy petition after the first was dismissed because Turner violated pleading requirements or his client had not obtained the required prepetition credit counseling. In sanctioning Turner, a bankruptcy judge noted that Turner's clients reported that he did not communicate information to them, and the clients were unaware that Turner would not represent them at hearings. We find that Turner violated rule 32:1.4(a)(2).

The commission also found Turner violated subparagraph 3, which requires an attorney to "keep the client reasonably informed about the status of the matter." *Id.* r. 32:1.4(a)(3). This includes keeping the client reasonably informed about "significant developments affecting the timing or the substance of the representation." *Id.* r. 32:1.4 cmt. 3. We have held an attorney violated this rule by failing to inform clients of court dates resulting in their arrests for failure to appear. *See Clarity*, 838

N.W.2d at 657. Turner failed to inform several clients of court hearings, which resulted in the arrest of three clients, two of whom were jailed.

We have also found an attorney violated this rule by failing to inform clients of upcoming court dates in civil cases. *See Weiland*, 885 N.W.2d at 209 (noting that the attorney did not inform his client of an upcoming pretrial conference for a divorce case). Turner failed to communicate with a bankruptcy client regarding a hearing, and after Turner and his client failed to attend, the judge dismissed the case. Turner and his client then missed the subsequent hearing on the motions for relief from dismissal and for reinstatement of the case. The court therefore denied both motions. We determine that Turner violated rule 32:1.4(a)(3).

Additionally, an attorney "shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Iowa R. Prof'l Conduct 32:1.4(b). An attorney violates this rule by failing to explain an alternative course of action that is reasonably necessary to permit the client to make an informed decision on the matter. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ta-Yu Yang*, 821 N.W.2d 425, 430 (Iowa 2012). We find that Turner did not communicate with a bankruptcy client "to the extent reasonably necessary to permit [her] to make informed decisions" such as whether it would be proper to file a Chapter 7 or Chapter 11 case. Iowa R. Prof'l Conduct 32:1.4(b).

Additionally, the misunderstanding with regard to Ramsey's plea agreement evinces a lack of communication on Turner's part that prevented Ramsey from making informed decisions. The court sentenced Ramsey to prison and rejected the contention there was an

understanding he would avoid prison. We conclude Turner violated rule 32:1.4(b).

3. *Expediting litigation.* An attorney "shall make reasonable efforts to expedite litigation consistent with the interests of the client." *Id.* r. 32:3.2. The commission found Turner violated this rule. We have held an attorney's failure to meet deadlines violates this rule. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Conroy*, 845 N.W.2d 59, 65 (Iowa 2014). Turner missed deadlines and failed to file the proper documents, resulting in delays and dismissals. We conclude Turner violated rule 32:3.2.

**B. Trust Account Violations.** The commission found Turner violated multiple provisions of rule 32:1.15, which governs the safeguarding of client property, as well as directs that client trust accounts are governed by chapter 45. He professed his unfamiliarity with these rules, but ignorance is no excuse. These rules play a vital role in safeguarding client funds, as underscored by Turner's failure to comply with court orders to refund fees to several bankruptcy clients. These rules also ensure a paper trail for cash payments that helps prevent underreporting income to avoid taxes. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Santiago*, 869 N.W.2d 172, 179 (Iowa 2015) ("The failure to deposit cash retainers potentially facilitates income tax avoidance.").

The commission found Turner violated rule 32:1.15(a), which states,

> A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property

> shall be kept by the lawyer and shall be preserved for a period of six years after termination of the representation.

Iowa R. Prof'l Conduct 32:1.15(a). Turner often failed to deposit client funds in a separate account and kept incomplete records. We conclude that Turner violated rule 32:1.15(a).

The commission found Turner violated rule 32:1.15(c), which requires an attorney to "deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred." *Id.* r. 32:1.15(c). We have held that a failure to deposit cash retainers in the trust account violates this rule. *See Santiago*, 869 N.W.2d at 179. We also have held that an attorney violates this rule by "prematurely depositing" advance fees into an operating account. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lubinus*, 869 N.W.2d 546, 549 (Iowa 2015). Turner failed to deposit the retainer or "appearance fee" in his trust account in his representation of several clients. Turner used a fee agreement that provided for payments into his operating account instead of a client trust account. His fee agreements, which provide for payments that "vest upon receipt," demonstrate an attempt to avoid the requirement of depositing advance fees into a trust account and the prohibition against withdrawing fees before they are earned. *Cf. Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sullins*, 648 N.W.2d 127, 134 (Iowa 2002) ("[S]imply labeling the initial funds as 'non-refundable, flat fees' does not save [an attorney] from his obligation to deposit them into trust accounts."). We conclude Turner violated 32:1.15(c).

The commission also found Turner violated rule 32:1.15(f) by failing to comply with court rules governing client trust accounts. Rule 32:1.15(f) states, "All client trust accounts shall be governed by chapter

45 of the Iowa Court Rules." Iowa R. Prof'l Conduct 32:1.15(f). Because we find violations of chapter 45, Turner's conduct violated rule 32:1.15(f).

Rule 45.1 requires funds received by an attorney "arising out of the practice of law" to "be deposited in one or more identifiable interest-bearing trust accounts." Iowa Ct. R. 45.1. Turner frequently failed to deposit many payments he received from clients into a client trust account. We conclude Turner violated rule 45.1.

"Rule 32:1.15 incorporates Iowa Court Rule 45.7, which directs a lawyer as to how to handle a retainer." *Clarity*, 838 N.W.2d at 655 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCarthy*, 814 N.W.2d 596, 607 (Iowa 2012)). Rule 45.7 requires an attorney to "deposit advance fee and expense payments from a client into the trust account" and limits the attorney to withdrawing these payments "only as the fee is earned or the expense is incurred." Iowa Ct. R. 45.7(3). The rule also requires a lawyer who accepts "advance fee or expense payments" to "notify the client in writing of the time, amount, and purpose of any withdrawal of the fee or expense" and provide a complete accounting. *Id.* r. 45.7(4). This notice must be transmitted to the client "no later than the date of the withdrawal." *Id.* In numerous cases, Turner failed to deposit retainer fees into a client trust account. Additionally, in each of the three fee agreements between Turner and Ramsey, Turner required advance payments but did not notify Ramsey of any withdrawals. We agree that Turner violated rules 45.7(3) and 45.7(4).

Rule 45.2(3) sets forth in detail the types of financial records attorneys are required to maintain for client trust accounts and billing. *See* Iowa Ct. R. 45.2(3). Rule 45.2(3)(*a*) requires an attorney to "maintain current financial records" and retain various "records for a period of six years after termination of the representation." *Id.* r. 45.2(3)(*a*). The rule

also provides that "[r]eceipts must be deposited [in client trust accounts] intact and records of deposit should be sufficiently detailed to identify each item." *Id.* r. 45.2(3)(*b*)(2). Withdrawals from a client trust account must "be made only by check payable to a named payee and not to cash, or by authorized bank transfer." *Id.* r. 45.2(3)(*b*)(3). Records required by rule 45.2(3) can be maintained electronically, but the records still must comply with the rules. *Id.* r. 45.2(3)(*c*).

Turner retained copies of retainer agreements as required by rule 45.2(3)(*a*)(3), but failed to provide Brinkmeyer with the other records he was required to retain. Turner failed to keep adequate check registers, client ledgers, client invoices, and notices and accountings prepared contemporaneously with the withdrawal of funds from the client trust account. Turner failed to prepare triple reconciliations of the client trust account on a monthly basis, nor did he maintain records to show the source of client trust account deposits. Turner did not retain client trust account bank statements or records for electronic transfers. For several clients, Turner failed to deposit receipts in his client trust account or follow the specific requirements for withdrawing money from his trust account. We agree that Turner violated rule 45.2(3).[2]

Additionally, an attorney "may not charge a nonrefundable special retainer or withdraw unearned fees." *Id.* r. 45.9(2). A special retainer is a fee "charged for the performance of contemplated services rather than for the lawyer's availability" that is "paid in advance of performance of those services." *Id.* r. 45.9(1). We have held that "it is unethical for a lawyer to enter into a nonrefundable advance-fee contract except in a case involving a general retainer." *Iowa Supreme Ct. Att'y Disciplinary*

---

[2]The commission concluded that Turner violated these specific provisions: rule 45.2(3)(*a*)(1)–(2), (4)–(10); rule 45.2(3)(*b*)(2)–(3); and rule 45.2(3)(**c**). We agree.

*Bd. v. Vilmont*, 812 N.W.2d 677, 679 (Iowa 2012). Turner's fee agreement with Carlson provided for an "appearance (start) fee" of $650 and noted that "[a]ll payments vest upon receipt." Turner violated rule 45.9(2) by charging what was in essence a nonrefundable special retainer.

Under rule 45.10(2), "[i]f the client makes an advance payment of a flat fee prior to performance of the services, the lawyer must deposit the fee into the trust account." Iowa Ct. R. 45.10(2). While the "lawyer and client may agree as to when, how, and in what proportion the lawyer may withdraw funds from an advance fee payment of a flat fee," their agreement "must reasonably protect the client's right to a refund of unearned fees if the lawyer fails to complete the service or the client discharges the lawyer." *Id.* r. 45.10(3). "In no event may the lawyer withdraw unearned fees." *Id.* Turner's initial fee agreement with Ramsey provided for a flat fee of $2000, with $1000 to be paid up front. The agreement also provided that the flat fee would "vest" with Turner immediately upon receipt. Turner neglected to deposit this advance payment into his client trust account. We conclude Turner violated rule 45.10(2) and rule 45.10(3).

**C. Other Violations.** The commission found Turner violated several other rules.

1. *Competence.* Rule 32:1.1 states, "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation." Iowa R. Prof'l Conduct 32:1.1. To establish that an attorney's conduct amounts to incompetence, the Board must show "the attorney did not possess the requisite legal knowledge and skill to handle the case." *Conroy*, 845 N.W.2d at 64

(quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Thomas*, 794 N.W.2d 290, 293 n.2 (Iowa 2011)).

The commission determined Turner violated rule 32:1.1 representing clients in bankruptcy proceedings. He presented paper bankruptcy petitions, even though electronic filing has been mandated since 2000. Turner frequently filed petitions without the requisite schedules, statement of affairs, and list of creditors. Turner lacked the requisite legal knowledge to handle his clients' bankruptcy cases. We determine he violated rule 32:1.1.

2. *Unreasonable fees.* Rule 32:1.5(a) provides that an attorney "shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses, or violate any restrictions imposed by law." Iowa R. Prof'l Conduct 32:1.5(a). The rule lists factors to be considered in determining if a fee is reasonable, including "the time and labor required." *See id.* Comment 1 to the rule notes that "[a] fee that is otherwise reasonable may be subject to legal limitations." *Id.* r. 32:1.5 cmt. 1. We have found that an attorney violated this rule by withdrawing advance fees before they had been earned, noting that "[t]aking fees in advance of earning them is illegal." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Parrish*, 801 N.W.2d 580, 586 (Iowa 2011) (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. D'Angelo*, 619 N.W.2d 333, 337 (Iowa 2000)); *cf. Iowa Supreme Ct. Att'y Disciplinary Bd. v. Rhinehart*, 827 N.W.2d 169, 181 (Iowa 2013) (concluding attorney collected an unreasonable fee in violation of this rule by failing to deduct fees the client previously paid, as was required by their later agreement).

Several of Turner's fee agreements for individual cases did not establish a flat fee,[3] retainer agreement,[4] or set a cap on the clients' fees. Instead, these fee agreements provided for weekly or biweekly payments until the completion of the case, regardless of whether Turner worked on the case each week. One fee agreement provided for payment to Turner's operating account, not a client trust account. Another agreement stated that "[a]ll payments vest upon receipt" regardless of whether Turner actually worked on that case and contrary to his obligation to return unearned fees. *See* Iowa R. Prof'l Conduct 32:1.5 cmt. 4 ("A lawyer may require advance payment of a fee, but is obliged to return any unearned portion."). We conclude that Turner violated rule 32:1.5(a).

3. *Frivolous claims and contentions.* Rule 32:3.1 states in relevant part,

> A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis

---

[3]"A flat fee is a fee for all services a lawyer must perform to complete the agreed task." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Said*, 869 N.W.2d 185, 192 (Iowa 2015). "If the flat fee is paid in advance, the fee must be deposited into the trust account." *Id.*

[4]We have distinguished between general and special retainers. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Apland*, 577 N.W.2d 50, 54–56 (Iowa 1998). A general retainer

> is a fee for agreeing to make legal services available when needed during a specified time period. In form it is an option contract; the fee is earned by the attorney when paid since the attorney is entitled to the money regardless of whether he actually performs any services for the client.

*Id.* at 54 (quoting Lester Brickman, *The Advance Fee Payment Dilemma: Should Payments Be Deposited to the Client Trust Account or to the General Office Account*, 10 Cardozo L. Rev. 647, 649 n.13 (1989)). In contrast, a special retainer

> covers payment of funds for a specific service. If the client and attorney agree that the attorney shall receive the special retainer payment in advance of performing the services, then the payment is commonly referred to as an "advance fee payment."

*Id.* at 55 (citation omitted). "[L]awyers must deposit all advance fee payments into a client trust account." *Id.* at 56.

in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law.

*Id.* r. 32:3.1.   The commission found Turner violated this rule.   In applying rule 32:3.1, we have "identified the alleged offending conduct and analyzed whether there was legal authority to support the attorney engaging in this conduct."  *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Barnhill*, 847 N.W.2d 466, 485 (Iowa 2014).   A bankruptcy judge determined that Turner violated Bankruptcy Rule 9011(b)(2), which governs pleading requirements and prohibits baseless or frivolous pleadings.  We likewise determine that Turner violated our rule 32:3.1 in those bankruptcy court filings.

4. *Candor toward the tribunal.*   Rule 32:3.3 requires attorney candor toward the tribunal.   The commission concluded that Turner violated rule 32:3.3(a)(1), which prohibits a lawyer from knowingly making "a false statement of fact or law to a tribunal."  Iowa R. Prof'l Conduct 32:3.3(a)(1).  "[T]he word 'knowingly' in the context of this rule requires actual knowledge, and we may infer an attorney's knowledge from the circumstances."  *Barnhill*, 847 N.W.2d at 475.  The bankruptcy judge who sanctioned Turner noted that, in response to the motions to dismiss two cases in which Turner's clients had not completed the required prepetition credit counseling, Turner filed objections alleging that the credit counseling had been obtained prior to his clients' filings. The judge noted that this "was obviously untrue based upon the date contained on the certificate of credit counseling."   Turner also filed inaccurate "Rule 2016(b) statements" regarding the fees paid by his bankruptcy clients; he later made statements to the court that contradicted his Rule 2016(b) statements.  In a criminal case, Turner misrepresented to the judge that he had already filed an appearance in

his client's case, though neither the clerk of court nor opposing counsel had received Turner's appearance. We conclude that Turner violated rule 32:3.3(a)(1).

5. *Demand for information from the Board.* Rule 32:8.1(b) prohibits an attorney from "knowingly fail[ing] to respond to a lawful demand for information from . . . [a] disciplinary authority." Iowa R. Prof'l Conduct 32:8.1(b). We expect attorneys to "be responsive to the Board's inquiries." *Silich*, 872 N.W.2d at 191. We can infer an attorney's knowing failure to respond to the demand for information when there is proof the attorney received the Board's inquiries but still did not provide the information sought. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Nelson*, 838 N.W.2d 528, 540 (Iowa 2013). The commission found Turner violated this rule by failing to respond to the Board's complaints. We agree. The Board sent Turner multiple notices of complaints and either had to reach him via email or by having the sheriff serve the notice on him. Turner did not respond until the Board filed its certificate of noncompliance. We determine Turner violated rule 32:8.1(b).

6. *Misconduct.* The commission concluded Turner violated rule 32:8.4(c), which provides that it is professional misconduct for an attorney to "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Iowa R. Prof'l Conduct 32:8.4(c). We view violations of this rule as "serious in nature because '[h]onesty is necessary for the legal profession to function.'" *Weiland*, 885 N.W.2d at 211 (alteration in original) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Haskovec*, 869 N.W.2d 554, 560 (Iowa 2015)).

We have held an attorney engaged in conduct involving dishonesty by falsely answering the Client Security Commission questionnaires. *See, e.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. Vandel*, 889 N.W.2d

659, 669 (Iowa 2017) (noting attorney falsely represented that she deposited all retainers into her client trust account and performed monthly reconciliations of the client trust account balance); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Morris*, 847 N.W.2d 428, 435 (Iowa 2014) (concluding attorney violated rule 32:8.4(c) by falsely stating in his 2010 questionnaire that he regularly reconciled his client trust account). Turner falsely represented that he kept all client funds in a separate trust account and deposited all retainers in the account in his 2014 Combined Statement and Questionnaire. In his 2015 and 2016 questionnaires, he responded "NA" to these questions and others, such as whether he performed monthly reconciliations of the client trust account balance. Turner later acknowledged that he provided "factually incorrect information" on the questionnaires.

Additionally, when Turner met with Brinkmeyer, Turner stated that he issued notices and accountings to clients when he withdrew funds from the client trust account and that he maintained a client ledger, but in a subsequent affidavit, Turner admitted he did not do so for some clients. In response to the Board's investigation, Turner falsely reported that he used flat fee agreements when the agreements actually required ongoing weekly payments, not a flat fee. He also falsely stated that his clients "never made advance payments." Brinkmeyer's audit report concluded that Turner had not prepared or retained client ledgers and that several of Turner's fee agreements provided for an "appearance fee" that Turner falsely claimed as earned immediately before he provided services. We conclude Turner violated rule 32:8.4(c).

7. *Conduct prejudicial to the administration of justice.* The commission found Turner violated rule 32:8.4(d), which states, "It is professional misconduct for a lawyer to . . . engage in conduct that is

prejudicial to the administration of justice." Iowa R. Prof'l Conduct 32:8.4(d). To violate this rule, an attorney's conduct "must hamper 'the efficient and proper operation of the courts or of ancillary systems upon which the courts rely' by violating the well-understood norms and conventions of the practice of law." *Silich*, 872 N.W.2d at 191 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Netti*, 797 N.W.2d 591, 605 (Iowa 2011)). "There is no typical form of conduct that prejudices the administration of justice." *Weiland*, 862 N.W.2d at 637 (quoting *Parrish*, 801 N.W.2d at 587).

"Conduct that wastes judicial resources violates this rule." *Silich*, 872 N.W.2d at 191. Neglect of an appeal resulting in its dismissal constitutes conduct prejudicial to the administration of justice, as does "[i]gnoring deadlines and orders, which results in default notices from the clerk of court." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Knopf*, 793 N.W.2d 525, 530 (Iowa 2011). "An attorney's failure to timely cooperate with disciplinary authorities is prejudicial to the administration of justice, violating not only rule 32:8.1 but also rule 32:8.4(d)." *Silich*, 872 N.W.2d at 191 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hedgecoth*, 862 N.W.2d 354, 363 (Iowa 2015)).

Turner failed to attend multiple hearings and arrived late for others, and he failed to timely file various motions. He made improper filings in bankruptcy court, delaying the proceedings. Turner was found in contempt of court in three Iowa counties. He did not cure a default in one client's appeal, which the clerk then dismissed. We determine that Turner violated rule 32:8.4(d).

8. *Investigations and audits by the Client Security Commission.* The commission found Turner violated rule 39.10(3)(*a*), which requires an attorney to "[c]ooperate fully with the director [of the Client Security

Commission] in any investigation, audit, or verification of any funds, securities, or property held in trust by that lawyer." Iowa Ct. R. 39.10(3)(*a*). Additionally, the commission found Turner violated the rules requiring an attorney to "[a]nswer all questions posed by the director that relate to any investigation, audit, or verification, unless claiming the privilege against self-incrimination" and to "[r]etain complete records of all trust fund transactions for a period of not less than six years following completion of the matter to which they relate, in accordance with" rules 32:1.15 and 45.2(3). *Id.* r. 39.10(3)(*b*), (*c*).

Turner failed to provide some records requested in Brinkmeyer's audit and was slow to produce other records. The Client Security Commission issued five notices of delinquency to Turner during its audit. Brinkmeyer's audit concluded Turner had not maintained records to show the source of deposits to the client trust account, retained bank statements or records for electronic transfer, or prepared or retained notices and accountings prepared contemporaneously with withdrawal of funds from the client trust account. Turner acknowledged that he failed to maintain records as required by the Iowa Court Rules. Turner also admitted that "he provided factually incorrect information" on the questionnaires. We conclude Turner violated rules 39.10(3)(*a*), (*b*), and (*c*).

## IV. Sanction.

We must determine the appropriate sanction. Over a prolonged period, Turner violated multiple disciplinary rules involving trust account requirements, dishonesty, and incompetence, resulting in client harm as well as wasted court time. His pattern of misconduct continued despite an ongoing audit of his trust accounts and repeated judicial sanctions, including several rulings finding him in contempt. The commission,

considering his inexperience and ADHD as mitigating factors,[5] recommended that we suspend Turner's law license for three months, with his reinstatement subject to his completion of ten hours of continuing legal education (CLE) on legal ethics and law practice management and therapy with a licensed mental health professional who attests to Turner's fitness to practice law. The Board urges us to impose a suspension of twelve to eighteen months with those same conditions on his reinstatement. Turner asks that we impose no new suspension and lift the restrictions imposed in his prior stipulation.

"We give the commission's recommendation respectful consideration, but may impose a greater or lesser sanction." *Morse*, 887 N.W.2d at 143. We weigh several factors, including

> [t]he nature of the violations, the attorney's fitness to continue in the practice of law, the protection of society from those unfit to practice law, the need to uphold public confidence in the justice system, deterrence, maintenance of the reputation of the bar as a whole, and any aggravating or mitigating circumstances.

*Id.* (quoting *Silich*, 872 N.W.2d at 192). We seek consistency with our prior cases. *Silich*, 872 N.W.2d at 192. However, "[t]here is no standard sanction for particular types of misconduct," and we "craft an appropriate sanction in light of each case's unique circumstances." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hearity*, 812 N.W.2d 614, 622 (Iowa 2012) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Boles*, 808 N.W.2d 431, 441 (Iowa 2012)).

Turner's trust account violations alone would warrant a suspension, perhaps of several months. *See, e.g., Iowa Supreme Ct. Att'y*

---

[5]We give no weight to the commission's reference to Turner's community service because the only community service we found in the record was court-ordered as a sanction for his contempt.

*Disciplinary Bd. v. Powell*, 830 N.W.2d 355, 358–59 (Iowa 2013) (collecting cases and imposing a three-month suspension for "improperly removing client funds from a trust account and failing to deposit advance fees into the trust account"). Turner's ignorance of the rules governing trust accounts cannot excuse his flagrant long-standing violations. Moreover, we have increased the length of suspension when trust account violations are accompanied by misrepresentations, neglect, or other violations. *See, e.g., Clarity*, 838 N.W.2d at 655–63 (imposing one-year suspension when experienced attorney violated trust account rules, neglected clients matters, and charged an unreasonable fee); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dunahoo*, 799 N.W.2d 524, 531–35 (Iowa 2011) (one-year suspension for neglect, trust account violations, and misrepresentations); *see also Morse*, 887 N.W.2d at 145 (noting that "suspensions of several months" were imposed for trust account and accounting violations that "were compounded by severe neglect, misrepresentation, or failure to cooperate" (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cross*, 861 N.W.2d 211, 225 (Iowa 2015))).

Turner made misrepresentations to the court, which "constitutes a serious breach of professional ethics, warranting a more severe sanction than neglect." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Gottschalk*, 729 N.W.2d 812, 821 (Iowa 2007); *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. McGinness*, 844 N.W.2d 456, 466–67 (Iowa 2014) (imposing a six-month suspension for misrepresentations when the attorney persisted in perpetuating his lie over discovery in a civil case); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wagner*, 768 N.W.2d 279, 288–89 (Iowa 2009) (concluding attorney's "misrepresentations to the court and to his clients also weigh in favor of a more severe sanction" and imposing a six-month suspension for neglect, misrepresentations, trust

account violations, and failure to respond to the board). "Dishonesty, deceit, and misrepresentation by a lawyer are abhorrent concepts to the legal profession[] and can give rise to the full spectrum of sanctions, including revocation." *Morris*, 847 N.W.2d at 437 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hall*, 728 N.W.2d 383, 387 (Iowa 2007)) (imposing six-month suspension when attorney violated trust account rules and "engaged in dishonesty in representing that he regularly reconciled his trust account").

We have imposed suspensions of varying lengths for engaging in conduct prejudicial to the administration of justice when compounded by additional violations. *See, e.g., Barnhill*, 847 N.W.2d at 488 (imposing sixty-day suspension for pressing frivolous claims, knowingly disobeying court orders, and engaging in conduct prejudicial to the administration of justice); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cunningham*, 812 N.W.2d 541, 554 (Iowa 2012) (imposing eighteen-month suspension on attorney who "committed numerous ethical violations involving neglect of client matters, misrepresentation, and conduct prejudicial to the administration of justice"); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Van Ginkel*, 809 N.W.2d 96, 99 (Iowa 2012) (imposing sixty-day suspension for neglect, conduct prejudicial to the administration of justice, and misrepresentation); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ireland*, 748 N.W.2d 498, 502–03 (Iowa 2008) (per curiam) (imposing six-month suspension for neglect and failure to cooperate with the board, which also constituted conduct prejudicial to the administration of justice).

We must consider Turner's other violations. He made frivolous filings in bankruptcy court. We have "suspended lawyers from the practice of law for filing frivolous matters, although these cases have

been accompanied by other unethical conduct." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Daniels*, 838 N.W.2d 672, 679 (Iowa 2013); *see also Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Hohnbaum*, 554 N.W.2d 550, 552 (Iowa 1996) (imposing three-month suspension for making misleading statements and persisting in a "patently frivolous" position). "We have imposed suspensions ranging from sixty days to two years for violations of the rule prohibiting excessive" or unreasonable fees. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Laing*, 832 N.W.2d 366, 374 (Iowa 2013) (collecting cases). "Sanctions for an attorney's violation of a court order vary in light of the accompanying misconduct." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Stowers*, 823 N.W.2d 1, 16–17 (Iowa 2012) (imposing ninety-day suspension when attorney was found in contempt, made unauthorized ex parte contact with a party he knew was represented by counsel, and "attempted to extort a $100,000 donation to a charity in his wife's name").

We consider harm to the client as an aggravating factor. *Morse*, 887 N.W.2d at 144. Turner's misconduct harmed several of his clients: three of his clients were arrested and two were jailed because he missed hearings, and several clients had to retain other counsel. *See Kingery*, 871 N.W.2d at 122, 125 (noting that "[a]rrests and jail time certainly constitute harm" and imposing sixty-day suspension); *Clarity*, 838 N.W.2d at 660, 663 (imposing one-year disciplinary suspension and concluding that "[t]he serious harm [Clarity's] clients suffered as a result of his misconduct is . . . aggravating: three clients were arrested and jailed, an appeal was dismissed with prejudice, clients had to retain other counsel, and retainers were not returned").

"A pattern of misconduct is an aggravating factor." *Boles*, 808 N.W.2d at 442. We have a pattern of misconduct here. Turner

habitually failed to deposit payments from clients into his client trust account as required. "[M]ultiple violations of disciplinary rules generally support enhanced sanctions." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Bartley*, 860 N.W.2d 331, 339 (Iowa 2015). Turner violated multiple rules of professional conduct.

We have held an attorney's failure to learn from an earlier audit is an aggravating factor. *See Santiago*, 869 N.W.2d at 174, 183 (noting that while the auditor completing the 2011 audit of attorney's records helped the attorney comply with the trust account requirements, the attorney "failed to take the lessons to heart" and committed additional trust account violations in 2013). We consider as an aggravating factor Turner's failure to learn during his twenty-month audit and take prompt corrective measures in response to the auditor's ongoing input.

An attorney's "[f]ailure to respond to and cooperate with the Board's investigation is also an aggravating factor." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dolezal*, 841 N.W.2d 114, 128 (Iowa 2013) (quoting *Cunningham*, 812 N.W.2d at 551). Turner repeatedly delayed responding to the Board's investigations until the Board sent additional copies of the complaint. We have recognized as aggravating factors efforts to stall a Client Security Commission audit and failure to cooperate with the auditor. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ricklefs*, 844 N.W.2d 689, 700 (Iowa 2014). Turner was uncooperative at times during Brinkmeyer's audit.

Apart from his interim suspension in these proceedings, our court has not previously disciplined Turner. has not been previously disciplined by our court. Prior discipline can be an aggravating factor but not when it is intertwined with the current case. *Powell*, 830 N.W.2d at 359. We therefore do not consider Turner's twenty-week interim

suspension as an aggravating factor because that suspension arose from the same conduct that forms the basis for this decision. Rather, "an interim suspension for conduct involved in a case can be considered as a mitigating factor in determining the length and adequacy of a suspension as a sanction in the case." *Id.*; *see also Clarity*, 838 N.W.2d at 662 (noting the difference between disability suspensions and disciplinary suspensions and explaining we "can consider an interim suspension arising from the same conduct when calibrating the disciplinary suspension").

We consider lengthy experience as an aggravating factor. *See, e.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. Smith*, 904 N.W.2d 154, 161 (Iowa 2017) ("The only aggravating factor here is Smith's lengthy experience as an attorney."); *Morris*, 847 N.W.2d at 436 (considering a "seasoned" attorney's twenty-five years of practice as an aggravating factor); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Howe*, 706 N.W.2d 360, 381 (Iowa 2005) (noting that an attorney with almost thirty years of experience "should have known better" than to violate conflict-of-interest rules). Turner is inexperienced. Even before we adopted the rules of professional conduct, we considered inexperience to be a mitigating factor. *See In re Disbarment of DeCaro*, 220 Iowa 176, 185, 162 N.W. 132, 137 (1935) ("What we might say or do with an attorney of larger experience, mature years, is not necessarily what would be just to this young man."). Other courts have regarded inexperience as a mitigating factor. *See, e.g., Ligon v. Tapp*, 519 S.W.3d 315, 323 (Ark. 2017) (recognizing "inexperience in the practice of law" as a mitigating factor); *State ex rel. Okla. Bar Ass'n v. Kerr*, 291 P.3d 198, 199 (Okla. 2012) (viewing fact that attorney had not been licensed a full year as a mitigating factor).

Nevertheless, Turner repeatedly missed court hearings and made misrepresentations to the court. Lawyers of *any* level of experience would understand that such actions are deplorable. *See, e.g., In re Cleland*, 2 P.3d 700, 705 (Colo. 2000) (en banc) (considering inexperience as a mitigating factor but noting "inexperience does not go far . . . to excuse or to mitigate dishonesty, misrepresentation, or misappropriation" because "[l]ittle experience in the practice of law is necessary to appreciate such actual wrongdoing"); *In re Powell*, 76 N.E.3d 130, 135 n.3 (Ind. 2017) (per curiam) (noting inexperience will generally not be a mitigating factor in cases involving dishonesty or misappropriation); *In re Disciplinary Action Against Klotz*, 909 N.W.2d 327, 339 (Minn. 2018) (per curiam) (recognizing "that limited years in practice can mitigate misconduct that is related to an attorney's inexperience" but explaining that "inexperience does not mitigate acts of dishonesty" (quoting *In re Disciplinary Action Against Michael*, 836 N.W.2d 753, 767 (Minn. 2013))); *Lawyer Disciplinary Bd. v. Scott*, 579 S.E.2d 550, 556 (W. Va. 2003) (viewing inexperience as a mitigating factor but emphasizing that the attorney's inexperience had nothing to do "with his pattern of lying and the falsification of documents").

Turner received multiple warnings from Iowa district court judges and the federal bankruptcy court through orders to show cause, sanctions, and rulings finding him in contempt. Brinkmeyer's ongoing audit should have led Turner to quickly resolve the problems with his bookkeeping practices, yet he failed to do so. Turner disregarded many wake-up calls to clean up his act.

We consider mitigating factors as well. Turner suffers from depression and ADHD. He argues that his ADHD explains his violations. He submitted the report of a forensic psychiatrist, Dr. William Logan,

who confirmed the diagnoses of ADHD and depression. Dr. Logan's report stated,

> Turner's difficulties with his law practice are related primarily to his longstanding Attention Deficit Disorder causing problems with focus, concentration and task organization. It is recommended he have monthly therapy for both depressive symptoms and his Attention Deficit problems and continue to take medication. Problems seem to occur when he was receiving medication at any quarterly intervals or was without medication and did not make time to talk about daily difficulties with time, scheduling and case load management. With the proposed modifications, including consultation with a mo[r]e experienced attorney on a regular basis, it is likely that future similar difficulties will be avoided.

We have recognized that "[p]ersonal illnesses, such as depression or attention deficit disorder, do not excuse a lawyer's misconduct but can be mitigating factors." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Curtis*, 749 N.W.2d 694, 703 (Iowa 2008). The key for mitigation is that the lawyer proactively seeks treatment to address the condition and avoid reoccurrence of the misconduct. *See Clarity*, 838 N.W.2d at 661 ("To be considered in mitigation, the alcoholism must have contributed to the ethical misconduct, and the lawyer must undertake rehabilitative efforts to control his addiction."); *see also Dolezal*, 841 N.W.2d at 129 (noting that when an attorney receives treatment for an illness, "his efforts to get healthy must be considered in fashioning an appropriate sanction" (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Fields*, 790 N.W.2d 791, 800 (Iowa 2010))). Because Turner attends counseling sessions and takes medication, we consider his depression and ADHD in mitigation.

Another mitigating factor is acceptance of responsibility and acknowledgment of wrongdoing. *See, e.g., Kingery*, 871 N.W.2d at 122 (considering an attorney's "sincere acceptance of responsibility as a mitigating factor"); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v.*

*Tofflemire*, 689 N.W.2d 83, 93 (Iowa 2004) (considering "the attorney's recognition of some wrongdoing" as a mitigating factor).  To his credit, Turner, while represented by counsel, stipulated to the violations and underlying facts before the commission hearing.  We weigh this mitigating factor against his prior delays in responding to the Board and his spotty cooperation with the auditor.  But, we note a lack of contrition in Turner's statement filed pro se shortly before submission of his case to our court.

We have considered efforts to correct and prevent billing and accounting problems as a mitigating circumstance.  *See Parrish*, 801 N.W.2d at 589.  Turner took business classes and worked with an experienced lawyer to mentor him with regard to trust account compliance and client management.  He also reports relying on his girlfriend, an accountant, for assistance.  Additionally, Turner has limited his caseload to eight clients in the areas of family law and nonfelony criminal law.  *Cf. Iowa Supreme Ct. Att'y Disciplinary Bd. v. West*, 901 N.W.2d 519, 528 (Iowa 2017) (considering "[v]oluntary remedial efforts to limit an attorney's practice to areas of competence" to be a mitigating factor).  Since his interim suspension was lifted with stipulated conditions in May 2017, Turner has served a smaller number of clients without any new complaints.

On balance, noting that Turner has already served a twenty-week interim suspension for these violations, we hold a one-year disciplinary suspension to run from the date of this opinion is appropriate.  Prior to reinstatement, Turner must provide an evaluation from a licensed mental health professional verifying his fitness to practice law.  *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kennedy*, 837 N.W.2d 659, 678 (Iowa 2013) (imposing a similar requirement).

We note that Turner has not yet paid court-ordered sanctions, fines, and costs and owes the following amounts (plus interest, if applicable):

| | |
|---|---|
| Fred Leaming | $497.50 |
| Steve Cummings | $875.00 |
| Laura Cummings | $875.00 |
| Kelly Willard | $1000.00 |
| Walter Anhorn | $1000.00 |
| Lasandra Kearney | $800.00 |
| Mahaska County court costs | $260.00 |
| Story County jury costs | $1920.75 |
| Story County fine | $500.00 |
| Polk County fine | $250.00 |
| **Total** | $7978.25 |

Prior to reinstatement, Turner must provide proof he has paid off all of the foregoing sums. *See, e.g., Clarity*, 838 N.W.2d at 653, 663 (conditioning reinstatement on attorney satisfying judgment a client obtained against him in small claims court); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Johnson*, 792 N.W.2d 674, 683 (Iowa 2010) (requiring attorney to provide proof of compliance with bankruptcy court order to return money to clients); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Joy*, 728 N.W.2d 806, 810–11, 816–17 (Iowa 2007) (conditioning reinstatement on attorney satisfying judgment and reimbursing tax clients for penalty).

Turner also must complete five hours of CLE on law firm management and five hours of CLE on ethics. *See, e.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ryan*, 863 N.W.2d 20, 33 (Iowa 2015) (requiring "proof of completion of two hours of ethics CLE and two hours of trust account CLE" before reinstatement); *Parrish*, 801 N.W.2d at 590 (requiring attorney to attend "continuing education with respect to billing, timekeeping practices, and client trust accounts, and to submit proof of his attendance to the court prior to reinstatement").

While we encourage Turner to seek guidance from a licensed Iowa attorney mentor, we decline to require such supervision going forward. *See Hedgecoth*, 862 N.W.2d at 366–67, 367 n.2 (declining to impose a supervision requirement); *cf. Iowa Supreme Ct. Att'y Disciplinary Bd. v. Powell*, 901 N.W.2d 513, 517 (Iowa 2017) (emphasizing that "[a]t some point, public protection and the reputation of the profession justify the revocation of a license to practice law" and noting that attorney who engaged in a "pattern of unethical conduct . . . over the last decade" was "approaching this point").

## V. Disposition.

We suspend Turner's license to practice law with no possibility of reinstatement for one year from the filing of this opinion. This suspension applies to all facets of the practice of law. *See* Iowa Ct. R. 34.23(3). Turner must comply with the notification requirements of Iowa Court Rule 34.24. At the conclusion of the suspension, Turner will be required to file a written application for reinstatement consistent with this opinion, providing proof of his completion of the prescribed CLE and an expert opinion from a mental health professional regarding his fitness to practice law. *See id.* r. 34.23(1). Turner must also provide proof he has satisfied the court-ordered payments listed above. Costs of this action are taxed to Turner pursuant to Iowa Court Rule 36.24.

**LICENSE SUSPENDED.**

All justices concur except Hecht and Christensen, JJ., who take no part.