# IN THE SUPREME COURT OF IOWA

No. 20–0005

Submitted September 16, 2020—Filed October 9, 2020

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Appellee,

vs.

**ERIC TINDAL,**

Appellant.

On appeal from the report of the Iowa Supreme Court Grievance Commission.

Grievance commission recommends suspension for violation of ethical rules. **ATTORNEY REPRIMANDED.**

Waterman, J., delivered the opinion of the court, in which Christensen, C.J., Appel, Mansfield, Oxley, and McDermott, JJ., joined. McDonald, J., filed a concurrence in part and dissent in part.

Alexander E. Wonio of Hansen, McClintock & Riley, Des Moines, for appellant.

Tara van Brederode and Wendell J. Harms, Des Moines, for appellee.

**WATERMAN, Justice.**

Lawyers shouldn't use default notices from the supreme court clerk as a tickler system for appellate briefing deadlines. Eric D. Tindal did so; and in 2018, we publicly reprimanded him for default notices he received in sixteen appeals. We now decide the sanction for his default notices in another thirteen appeals. Importantly, all but four of the new default notices at issue preceded his 2018 public reprimand. The Iowa Supreme Court Attorney Disciplinary Board seeks "at least" a two-month suspension. A division of the Iowa Supreme Court Grievance Commission that heard the evidence recommends a one-month suspension. It is undisputed that Tindal cured all of the defaults without any appeal being dismissed, and he personally paid every penalty assessment. Tindal, by all accounts a competent criminal defense *trial* lawyer, has agreed to forgo handling court-appointed criminal and postconviction appeals. For these reasons, we impose a second public reprimand rather than suspending his license.

## I. Background Facts and Proceedings.

Tindal obtained his Iowa law license in 2000. He worked seventeen years at a general practice firm in Cedar Rapids before joining his current firm in Iowa City where he focuses on criminal defense.

In 2012, Tindal received a private admonition for lack of diligence in a court-appointed appeal after receiving two default notices and failing to apply for further review of the court of appeals decision. When Tindal joined Dean Keegan's law practice in 2017, his workload increased dramatically, in part because Tindal took over the cases handled by another lawyer in the firm who experienced serious health problems. Tindal continued handling numerous court-appointed appeals, sometimes

adding two or three a week. During this time, he received default notices. Each notice of default contained the same advisory language:

> You are advised that if the appeal is dismissed as a result of counsel's failure to comply with this default notice, a copy of the dismissal order will be forwarded to the Iowa Supreme Court Attorney Disciplinary Board and to the State Public Defender's Office, where applicable. The dismissal may serve as grounds for an investigation of neglect of a client's legal matter.

Tindal cured each default by filing the overdue briefs and appendices and personally paying all the penalties. No appeal was dismissed, nor did we order Tindal's removal as appellate counsel. Based on the wording of the clerk's notice, Tindal believed disciplinary charges would only be triggered by the dismissal of an appeal.

The Board charged Tindal with disciplinary violations based on twenty-one default notices and penalty assessments in sixteen appeals. On December 6, 2017, Tindal paid the accrued penalties assessed for those defaults totaling $3150. On October 3, 2018, we publicly reprimanded Tindal for that conduct. Meanwhile, Tindal had continued to receive default notices and penalty assessments in other appeals.

On April 10, 2019, the Board filed a new complaint against Tindal alleging multiple default notices issued between February 2018 and March 2019 in thirteen appeals.[1] All but four of the default notices preceded his October 2018 reprimand. Tindal cured every default and paid all the monetary penalties out of his own pocket. No appeal was dismissed, nor did his default notices result in the appointment of substitute appellate counsel. Tindal voluntarily revised his contract with the State Public Defender to remove himself from its appellate court-appointed list.

---

[1]The Board filed an amended complaint on June 28, 2019.

In all thirteen appeals, the Board alleged that Tindal violated Iowa Rules of Professional Conduct 32:1.3 (diligence), 32:3.2 (expediting litigation), and 32:8.4(d) (conduct prejudicial to the administration of justice). In one of the appeals, the Board additionally alleged that Tindal's poor communication with a client, Edward Campbell, violated Iowa Rule of Professional Conduct 32:1.4(a)(2), (3), and (4).

On August 28, 2019, the commission held an evidentiary hearing. The Board submitted its case through documentary evidence including the filings in the appeals and his correspondence with Campbell. Tindal called five witnesses who testified in person regarding his professionalism and competency as a criminal defense lawyer.

The Board and Tindal filed posthearing briefs. On January 2, 2020, the commission filed its findings of fact, conclusions of law, and recommended sanctions. The commission found Tindal violated Iowa Rules of Professional Conduct 32:1.3, 32:3.2, and 32:8.4(d) in all thirteen appeals but that the Board failed to prove Tindal violated rule 32:1.4(a) in Campbell's appeal. The commission found that the default notices in nine of the thirteen appeals preceded Tindal's 2018 public reprimand and concluded consideration of those additional defaults would have triggered his suspension by our court. Based primarily on that conclusion, the commission recommended that we impose a thirty-day suspension. The Board seeks at least a sixty-day suspension. Tindal asks to avoid a suspension, noting the lack of client harm and the fact most of the default notices preceded his prior reprimand.

## II. Standard of Review.

"We review attorney disciplinary proceedings de novo." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Meyer*, 944 N.W.2d 61, 67 (Iowa 2020) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Rhinehart*, 827 N.W.2d

169, 171 (Iowa 2013)). The Board must prove the attorney misconduct by a convincing preponderance of the evidence, which "is more demanding than the civil preponderance-of-the-evidence standard but less demanding than the criminal beyond-a-reasonable-doubt standard." *Id.* While "[w]e give the commission's findings and recommendations respectful consideration, . . . we are not bound by them." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Morse,* 887 N.W.2d 131, 138 (Iowa 2016) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Weiland,* 862 N.W.2d 627, 635 (Iowa 2015)).

### III. Ethical Violations.

We reiterate that using the appellate clerk's notices of default "as a private tickler system is unacceptable behavior for an attorney." *Weiland,* 862 N.W.2d at 642; *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Curtis,* 749 N.W.2d 694, 699 (Iowa 2008) (characterizing an attorney's use of the appellate clerk's office as a private tickler system as "deplorable"). Tindal agrees with the commission's finding that he violated rules 32:1.3 and 32:3.2, but we are not bound by an attorney's stipulation as to rule violations. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kingery,* 871 N.W.2d 109, 117 (Iowa 2015). Tindal disputes the commission's finding that he violated rule 32:8.4(d) and argues the Board waived appellate review of the commission's finding that the Board failed to prove a violation of rule 32:1.4(a). We review each alleged rule violation to determine whether the Board met its burden of proof. *Id.*

**A. Iowa Rule of Professional Conduct 32:1.3.** Iowa Rule of Professional Conduct 32:1.3 states, "A lawyer shall act with reasonable diligence and promptness in representing a client." An attorney may violate rule 32:1.3 through repeated failures to perform obligations or a "conscious disregard" for the responsibilities owed to the client. *Weiland,*

862 N.W.2d at 635. "[T]he attorney is required to file the appropriate documents and briefs. Anything less may be considered neglect." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lesyshen*, 712 N.W.2d 101, 105 (Iowa 2006).

We have previously determined that an attorney violated this rule when she failed to comply with the deadlines in nine separate criminal cases, resulting in over twenty default notices. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kieffer-Garrison*, 847 N.W.2d 489, 492 (Iowa 2014). From February 16, 2018, to March 8, 2019, Tindal received notices of default in thirteen appeals for missing deadlines. These defaults occurred despite the fact that Tindal asked for and received ten extensions. We determine that Tindal violated rule 32:1.3, as he concedes and the commission found.

**B. Iowa Rule of Professional Conduct 32:3.2.** Iowa Rule of Professional Conduct 32:3.2 states, "A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client." For example, "[a]n attorney violates this rule when he or she fails to 'file documents, pursue appeals, and meet deadlines.' " *Weiland*, 862 N.W.2d at 637 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Conroy*, 845 N.W.2d 59, 65 (Iowa 2014)).

We have specifically determined that an attorney violates rule 32:3.2 when the attorney fails to file required appellate documents, resulting in default notices. *Kingery*, 871 N.W.2d at 120. The same conduct exists here. Tindal failed to make a reasonable effort to expedite his clients' appeals. He repeatedly failed to timely file documents, often even after receiving extensions. We agree with the commission that Tindal violated rule 32:3.2, as he concedes.

**C. Iowa Rule of Professional Conduct 32:8.4(d).** Iowa Rule of Professional Conduct 32:8.4(d) states, "It is professional misconduct for a lawyer to: . . . engage in conduct that is prejudicial to the administration of justice . . . ." A dismissal is not required to find a violation of this rule; "An attorney violates rule 32:8.4(d) when his or her 'misconduct . . . causes court proceedings to be delayed *or* dismissed.' " *Conroy*, 845 N.W.2d at 65 (emphasis added) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Rhinehart*, 827 N.W.2d 169, 180 (Iowa 2013)).

"Failing to comply with appellate deadlines is prejudicial to the administration of justice." *Id.* Additionally, "an attorney hampers proper court operations by '[i]gnoring deadlines and orders, which results in default notices from the clerk of court.' " *Kingery*, 871 N.W.2d at 121 (alteration in original) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Knopf*, 793 N.W.2d 525, 530 (Iowa 2011)). Tindal repeatedly missed deadlines, triggering the clerk's default notices. We agree with the commission that Tindal violated rule 32:8.4(d).

**D. Iowa Rule of Professional Conduct 32:1.4(a).** The Board alleged that Tindal violated Iowa Rules of Professional Conduct 32:1.4(a)(2), (3), and (4) in the Campbell appeal. The commission found the Board failed to prove these charges. We first address Tindal's threshold argument that the Board waived appellate review by failing to cross-appeal. Tindal relies on Iowa Court Rule 36.22(2), which provides, "The [Board] may apply to the supreme court for permission to appeal from a determination, ruling, report, or recommendation of the grievance commission." The rule is silent about cross-appeals, but Tindal asks us to read in that requirement when the respondent attorney appeals. We decline to do so.

In our view, we may undertake de novo review of the commission's record, including any rule violations alleged by the Board, even if the commission found the Board failed to prove the violation. Indeed, we have the power to review the commission record de novo and impose sanctions when no party appeals or applies for permission to appeal. *See* Iowa Ct. R. 36.21(1). When, as here, the respondent attorney appeals, we review the entire record de novo. Iowa Ct. R. 36.22(4). No cross-appeal by the Board is required.[2]

Accordingly, we will address the merits of the Board's allegation that Tindal violated rule 32:1.4. Rule 32:1.4 provides in pertinent part,

> (a) A lawyer shall:
>
> . . . .
>
> (2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;
>
> (3) keep the client reasonably informed about the status of the matter; [and]
>
> (4) promptly comply with reasonable requests for information . . . .

Iowa R. Prof'l Conduct 32:1.4.

---

[2]Tindal cites no case requiring the Board to cross-appeal before we can address an alleged rule violation the commission found was not proven. Appeals by attorney-respondents under court rule 36.22 are governed by the Iowa Rules of Appellate Procedure only to the extent those rules are consistent with chapter 36. Iowa Ct. R. 36.22(4). Cases requiring a cross-appeal from civil judgments are inapposite. District court judgments grant or deny relief to the parties, and the appellee generally must cross-appeal to obtain greater relief. By contrast, the grievance commission report presents our court with nonbinding recommendations. Iowa Ct. R. 36.19(1). On our de novo review, we may find a rule violation that the commission determined wasn't proven, without a cross-appeal by the Board. *See, e.g.*, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Noel*, 933 N.W.2d 190, 201 (Iowa 2019) ("[T]he commission concluded the Board failed to prove that Noel violated rule 32:3.4(d). We disagree."). In attorney discipline cases, the parties cannot restrict our de novo review by failing to appeal or cross-appeal, just as "we are not bound by stipulations of violations or sanctions." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Turner*, 918 N.W.2d 130, 144 (Iowa 2018). "Instead, we review the stipulation and record to determine whether a violation occurred and what sanction is appropriate." *Id.*

Tindal was appointed in Campbell's appeal from postconviction proceedings. Tindal twice wrote Campbell to report he was awaiting the preparation of the transcripts. After a default notice, we granted Tindal's motion to withdraw. Campbell, a prolific filer of pro se pleadings, never reached out to Tindal directly. The Board identified no communication from Campbell to Tindal that went unanswered. Nor did the Board establish that any of Campbell's pro se filings required consultation with Tindal. Indeed, our court ruled that no action was required on Campbell's pro se filings.

We agree with the commission's finding that the Board failed to prove that Tindal violated rule 32:4(a).

**IV. Sanction.**

"We craft appropriate sanctions based upon each case's unique circumstances . . . ." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Noel*, 933 N.W.2d 190, 205 (Iowa 2019) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kennedy*, 837 N.W.2d 659, 673 (Iowa 2013)). We consider factors including,

> [t]he nature of the violations, the attorney's fitness to continue in the practice of law, the protection of society from those unfit to practice law, the need to uphold public confidence in the justice system, deterrence, maintenance of the reputation of the bar as a whole, and any aggravating or mitigating circumstances.

*Id.* (alteration in original) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Turner*, 918 N.W.2d 130, 152 (Iowa 2018)).

We must determine the sanction for Tindal's conduct resulting in default notices in thirteen appeals during 2018–19, mindful that nine of those preceded his October 2018 public reprimand for default notices in sixteen appeals during 2016–17. The commission recommended a thirty-day suspension premised on its belief that our court would have

suspended Tindal in 2018 had the Board charged him with another nine default notices. We disagree with that premise. In our view, given Tindal's nearly unblemished disciplinary history in 2018 (he had one prior private admonishment), he still would have received a public reprimand for the series of default notices with no client harm, whether in sixteen or twenty-five appeals.

Sequence matters. *See id.* ("We believe the timing of the present violations has bearing on the sanction."). In *Iowa Supreme Court Attorney Disciplinary Board v. Noel*, we imposed a public reprimand instead of the suspension recommended by the board and commission because the conduct at issue preceded the discipline imposed for earlier misconduct. *Id.* at 205–06. We concluded the prior sanction, a public reprimand, would have remained the same had we been aware then of the additional misconduct, and we therefore declined "to enhance Noel's sanction in the present case." *Id.* at 206. We reach the same conclusion here.

Tindal argues that based on the wording of the default notices, he thought he faced discipline only if his continued inaction resulted in dismissal of the appeal. He avoided any dismissals. His 2018 reprimand, however, educated him that a series of default notices could trigger discipline without the dismissal of an appeal. Nevertheless, nine of the default notices presently at issue preceded that reprimand. We do not consider these nine default notices in 2018 to be an aggravating factor in today's proceeding. As we explained in *Noel*,

> We use prior discipline as an aggravating factor because an attorney did not learn from his or her prior misconduct. How can we use prior discipline for this purpose when we did not discipline an attorney prior to committing an act? Thus, for prior discipline to qualify as an aggravating factor, we must

have disciplined an attorney before he or she commits the subsequent act.

*Id.* at 205.

This leaves us with default notices in the subsequent four cases. We are troubled that Tindal missed several more appellate deadlines *after* being publicly reprimanded for such conduct. We consider his 2012 private admonition and his 2018 public reprimand for like misconduct as aggravating factors. *Weiland*, 862 N.W.2d at 641–42. But the Board cites no case suspending an attorney solely for default notices cured without dismissal of the appeal, court-ordered substitution of counsel, other ethical violations, or a prior suspension for similar misconduct. *See id.* at 639–42 (surveying cases).

We next consider other aggravating and mitigating factors. The lack of harm to Tindal's clients is a key mitigating factor. *Id.* at 642. He frequently represents clients from an underserved part of the community— another mitigating factor. *Id.* at 643. On the other hand, his twenty years of experience practicing law is an aggravating factor. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Vandel*, 889 N.W.2d 659, 669 (Iowa 2017).

We reject the Board's argument in aggravation that Tindal "refused to acknowledge the wrongful nature of his conduct." To the contrary, Tindal cooperated with the Board's investigation and readily conceded his violations of rules 32:1.3 and 32:3.2. An attorney is entitled to mount a defense, and Tindal successfully defended the allegation that he violated rule 32:1.4(a). Although we found he violated rule 32:8.4(d), his defenses to that charge were not frivolous.

Tindal's suspension is not needed to protect the public. Tindal has discontinued taking criminal or postconviction appeals for the State Public Defender. We consider a lawyer's voluntary practice restrictions in

mitigation. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hedgecoth*, 862 N.W.2d 354, 367 (Iowa 2015) ("[W]e are satisfied that Hedgecoth's voluntary commitment to refrain from representing clients on appeal will provide adequate assurance against recurrence . . . ."); *see also Kingery*, 871 N.W.2d at 124–25 ("[W]e can consider voluntary cessation when evaluating whether our sanction will serve its purposes of deterring future misconduct and protecting the public."). We also consider in mitigation that Tindal has taken corrective measures within his office to better track deadlines and ensure timely filings. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Mathahs*, 918 N.W.2d 487, 499 (Iowa 2018) (considering corrective measures in mitigation). Well-qualified witnesses testified to Tindal's fitness to practice law and high level of competence.

On the unique facts of this case, especially considering the timing of the prior reprimand and default notices, we conclude another public reprimand is sufficient, while hereby warning Tindal that further missed deadlines could trigger a suspension. *See Noel*, 933 N.W.2d at 206 ("However, we remind Noel that future misconduct will result in harsher sanctions.").

### V. Disposition.

We impose a public reprimand on Tindal rather than the suspension recommended by the commission. We tax the costs of this action to Tindal under Iowa Court Rule 36.24(1).

**ATTORNEY REPRIMANDED.**

All justices concur except McDonald, J., who concurs in part and dissents in part.

#20–0005, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Tindal*

**McDONALD, Justice (concurring in part and dissenting in part).**

I concur in all parts of the majority opinion with the exception of division III.D regarding the issue of whether the Iowa Supreme Court Attorney Disciplinary Board waived its challenges to the Iowa Supreme Court Grievance Commission's findings and conclusions. The relevant court rules and controlling precedent require the attorney disciplinary board to file a cross-appeal to challenge the grievance commission's findings. Because the Board failed to file a cross-appeal, I would hold it waived its challenges to the commission's findings. I thus respectfully concur in part and dissent in part.

After an attorney disciplinary hearing, when the commission recommends a reprimand, suspension, or revocation, the commission must file its findings of fact, conclusions of law, and recommendations with the clerk of the commission. *See* Iowa Ct. R. 36.19(1). The clerk of the commission in turn "must promptly file the report with the supreme court clerk" and "[t]he matter then stands for disposition in the supreme court." *Id.* This court may dispose of the matter by one of two methods.

First, if the attorney does not appeal the commission's findings and conclusions, this court may review the recommended sanction. The rule provides if the attorney does not appeal, this court "will notify the parties that they may file written statements with the supreme court in support of or in opposition *to the discipline* the grievance commission recommends." Iowa Ct. R. 36.21(1) (emphasis added). On de novo review of the record, "the supreme court *may impose a lesser or greater sanction* than the discipline the grievance commission recommends." *Id.* (emphasis added). The rule does not provide for a mechanism for the parties to

contest the commission's findings and conclusions or the authority for this court to review the commission's findings and conclusions.

Second, an attorney or the board may seek appellate review of the commission's findings, conclusions, and recommended sanction. Rule 36.22 provides an attorney "may appeal to the supreme court from the report or recommendation the grievance commission files." Iowa Ct. R. 36.22(1). The rule also provides the board "may apply to the supreme court for permission to appeal from a determination, ruling, report, or recommendation of the grievance commission." Iowa Ct. R. 36.22(2). When the board seeks appellate review, this court "may grant such appeal in a manner similar to the granting of interlocutory appeals in civil cases under the Iowa Rules of Appellate Procedure." Iowa Ct. R. 36.22(2). In either case, once an appeal is docketed, "the appeal must proceed pursuant to the Iowa Rules of Appellate Procedure." Iowa Ct. R. 36.22(4).

Under the rules of appellate procedure and controlling precedents, a party must timely file a cross-appeal to obtain appellate review of an adverse finding or decision. The rules of appellate procedure provide a party must file a notice of cross-appeal "within the 30-day limit for filing a notice of appeal, or within 10 days after the filing of a notice of appeal, whichever is later." Iowa R. App. P. 6.101(2)(*b*). The failure to file a cross-appeal precludes appellate review of an adverse finding or ruling. *See State v. Hagen*, 840 N.W.2d 140, 144 n.3 (Iowa 2013) (stating issue was not preserved for appeal where party did not file a cross-appeal); *State v. Hernandez-Lopez*, 639 N.W.2d 226, 233 (Iowa 2002) (requiring party to raise issue with district court, get a ruling from the district court, and raise the issue again on appeal); *Johnston Equip. Corp. of Iowa v. Indus. Indem.*, 489 N.W.2d 13, 17 (Iowa 1992) ("Notwithstanding our past holding to the contrary, we think the preservation requirement ordinarily should apply

only to an unsuccessful party. Our cases are legion which hold that a trial court may be affirmed on grounds upon which it does not rely. We think it is entirely appropriate for a successful, as distinguished from an unsuccessful, party to urge affirmance on such a basis." (Citation omitted.)); *Becker v. Cent. States Health & Life Co.*, 431 N.W.2d 354, 356 (Iowa 1988) ("Failure to cross-appeal on an issue decided adversely . . . forecloses . . . raising the issue on appeal."), *overruled on other grounds by Johnston Equip. Corp.*, 489 N.W.2d at 17. The fact that our review is de novo does not excuse the Board's failure to file a cross-appeal. "Review is de novo as respondent states but it is such only on matters properly presented to this court." *In re Novak's Marriage*, 220 N.W.2d 592, 598 (Iowa 1974). In the absence of a cross-appeal, even on de novo review, a party may defend the decision being reviewed on any grounds urged below, but a party cannot obtain greater relief than that afforded in the decision being reviewed. *See id.*; *see also In re Marriage of Sjulin*, 431 N.W.2d 773, 777 (Iowa 1988) (holding we could not consider the appellee's request for greater relief because she did not cross-appeal); *In re Marriage of Pieper*, 369 N.W.2d 439, 442 (Iowa 1985) (declining relief where the party asked "affirmative relief by us by way of a further increase in the amount of the educational child support decreed by the trial court, but she did not cross appeal"); *Novak*, 220 N.W.2d at 598 ("[T]he principle of not allowing greater relief to appellee not appealing is applicable in equity actions . . . ."); *Midwest Hatchery & Poultry Farms, Inc. v. Doorenbos Poultry, Inc.*, 783 N.W.2d 56, 64 n.7 (Iowa Ct. App. 2010) (finding where party does not appeal or cross-appeal "it is entitled to no greater relief than it was accorded in the district court"); *Fed. Land Bank of Omaha v. Dunkelberger*, 499 N.W.2d 305, 308 (Iowa Ct. App. 1993) ("Generally, a party who has

not appealed is not entitled to a ruling more favorable than it obtained in the trial court.").

The majority's conclusion to the contrary ignores these precedents and conflates the scope of review with the standard of review. De novo review does not mean we review all issues anew; it means we review anew those issues properly preserved and presented for appellate review.

The majority's conflation of the scope of review and the standard of review has, in my view, distorted the process by which this court processes and reviews attorney disciplinary matters. This court has processed and reviewed all attorney disciplinary matters identically without regard to whether the attorney has appealed. If the attorney has chosen not to appeal the commission's findings and conclusions and instead opted to present a statement regarding sanctions pursuant to rule 36.21, this court has reviewed anew all of the commission's findings, conclusions, and recommended sanction even where the parties have not raised the issues. If the attorney or board has appealed the commission's findings and conclusions pursuant to rule 36.22, this court has reviewed anew all of the commission's findings, conclusions, and recommended sanctions even where the parties have not cross-appealed or even raised the issues. This court's identical treatment of proceedings under rule 36.21 and rule 36.22 is contrary to the text of the relevant rules, contrary to the rules of appellate procedure, and contrary to controlling precedents. This court's identical treatment of proceedings under rule 36.21 and rule 36.22 is also contrary to a basic rule of construction: "[w]e presume statutes or rules do not contain superfluous words." *Iowa Ins. Inst. v. Core Grp. of Iowa Ass'n for Just.*, 867 N.W.2d 58, 75 (Iowa 2015) (alteration in original) (quoting *State v. McKinley*, 860 N.W.2d 874, 882 (Iowa 2015)). But we have rendered the entirety of both rules superfluous. If rules 36.21 and 36.22

mean the exact same thing in practice, why do we have separate rules at all? The majority provides no answer.

I respectfully suggest we have separate rules because they do not mean the same thing. When an attorney or the board elects not to appeal, pursuant to rule 36.21, the parties can file statements "in support of or in opposition *to the discipline* the grievance commission recommends." Iowa Ct. R. 36.21(1) (emphasis added). This court, on de novo review of the record, "*may impose a lesser or greater sanction* than the discipline the grievance commission recommends." *Id.* In determining the appropriate sanction, the commission's findings and conclusions should be deemed established because the findings and conclusions are unchallenged. Further, any disposition pursuant to rule 36.21(1) should be pursuant to an order of the court and not a full opinion on the merits. When a party has elected not to appeal, the appellate jurisdiction of this court is not invoked, and no "case" is created. In contrast, when an attorney or the board appeals the commission's findings and conclusions pursuant to rule 36.22, this court's appellate jurisdiction is invoked, and a "case" is created. In this circumstance, the matter should proceed as a case in accord with the rules of appellate procedure and our precedents regarding the preservation and presentation of claims for appellate review. As with all other cases, disposition on the merits should be pursuant to an opinion rather than an order.

Because of these differences between the rules, I would treat these proceedings differently going forward. For these reasons, I respectfully concur in part and dissent in part.